## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

BRETT HERRINGTON
3232 FM 163 Road
Cleveland, Texas  77327

                    *Plaintiff*,

        v.

UNITED STATES DEPARTMENT OF DEFENSE
1000 Defense Pentagon,
Washington, DC  20301-1000

                    *Defendant*.

Case No. 21-cv-3159

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF

### INTRODUCTION

1.      Specialist Brett T. Herrington ("SPC Herrington" or "Plaintiff"), is a combat veteran who served honorably in the United States Army ("Army") as a Chemical Operations Specialist in the 3rd Battalion, 75th Ranger Regiment, from January 9, 2002 to April 22, 2005. As a result of his honorable military service, SPC Herrington was awarded several medals and citations including the Army Commendation Medal with "V" Device, which recognizes heroism or valor in combat. While bravely serving his country, SPC Herrington permanently injured his back during a parachute fall for an airborne training exercise. SPC Herrington's severe back injury and the resulting nerve damage—a condition known as radiculopathy—forced him to involuntarily medically separate from the United States Army with an honorable discharge.

2.      Based on its assessment of the severity of his back injury, the Army found that SPC

Herrington was unfit for continued service and medically separated him from the Army with a

disability rating of just 10%. Despite evidence that SPC Herrington was experiencing severe and

debilitating nerve pain, numbness, and weakness in his lower extremities—all common signs of

radiculopathy—the Army did not issue a disability rating for SPC Herrington's bilateral

radiculopathy.

3.      On September 25, 2017, in accordance with 10 U.S.C. § 1554a(c), SPC Herrington

appealed his disability rating decision to the United States Department of Defense ("DoD")

Physical Disability Board of Review ("PDBR" or "Review Board"). SPC Herrington requested

that the PDBR correct his records to reflect that both his back injury and the related bilateral

radiculopathy were each independent conditions that rendered SPC Herrington unfit for further

service. For the two conditions, SPC Herrington requested that the PDBR issue a combined

disability rating of at least 40%, which would accurately reflect the severity of the injuries he

sustained in the parachute fall.

4.      On May 15, 2019, the PDBR recommended changing Plaintiff's low back pain to

a 20% rating and the Deputy Assistant Secretary of the Army ("Deputy Assistant Secretary"),

acting on behalf of the Secretary of the Army ("Secretary"), accepted the PDBR's

recommendation. That increase was a hollow victory. While an increase from his previous

disability percentage, the 20% disability rating likewise failed to fully account for the severity of

SPC Herrington's back injury, ignored the evidence of SPC Herrington's bilateral radiculopathy,

and rendered him still ineligible for permanent disability retirement (which requires a disability

rating of at least 30%).

5.      When reviewing appeals like SPC Herrington's, the PDBR is required to apply the disability rating criteria contained in the disability rating schedule of the United States Department of Veterans Affairs (the "VA"), known as the VA Schedule for Rating Disabilities ("VASRD") (38 C.F.R. Part IV) and to adhere 10 U.S.C. § 1554a and Department of Defense Instruction ("DoDI") 6040.44. The PDBR and the Secretary failed both to properly apply the VASRD and to follow DoDI 6040.44, and SPC Herrington therefore seeks declaratory relief under the Administrative Procedure Act ("APA").

6.      The APA allows citizens to challenge arbitrary and capricious agency actions. 5 U.S.C. § 706(2)(A). The Secretary's decision to deny SPC Herrington disability retirement by rating his disabilities at less than 30% was an arbitrary action, unsupported by substantial evidence, and not in accordance with law. The Review Board violated federal law when it (1) failed to assign probative value to SPC Herrington's medical examination showing reduced range of motion in his lower back in violation of 38 C.F.R. § 4.7; (2) failed to consider SPC Herrington's further functional loss of range of motion due to pain in violation of 38 C.F.R. §§ 4.40, 4.45, 4.59; (3) failed to resolve any doubt regarding his disability in favor of SPC Herrington in accordance with 38 C.F.R. § 4.3; and (4) failed to consider whether SPC Herrington's bilateral radiculopathy was an unfitting condition in violation of 10 U.S.C. § 1554a and DoDI 6040.44.

7.      The ultimate effect of those mistakes is that SPC Herrington has been denied the healthcare and disability benefits to which he is entitled, including TRICARE medical coverage, Post Exchange and Commissary privileges, and access to Morale, Welfare, and Recreation programs. The PDBR's determination is arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

8.    This Court should (1) find that the PDBR's May 15, 2019 decision and the Secretary's July 15, 2020 decision affirming the 20% rating were arbitrary and capricious, unsupported by substantial evidence, and contrary to law, and set aside those decisions under 5 U.S.C. § 706(2)(A); (2) order  the Secretary to correct Plaintiff's military records to reflect that both his lower back condition and bilateral radiculopathy are unfitting conditions; and (3) order the Secretary to correct Plaintiff's medical records to reflect the correct combined disability rating to ensure that SPC Herrington receives the disability retirement to which he is entitled for the permanent and debilitating injuries he suffered while serving in the United States Army.

## JURISDICTION

9.    Jurisdiction in this Court stems from a federal question and is proper under 28 U.S.C. §§ 1331, 2201, and 2202. Plaintiff seeks relief under the APA, 5 U.S.C. § 701 *et seq*.

10.    The Assistant Secretary's decision constitutes final agency action for which there is no other adequate remedy in a court. *See id.* § 704.

11.    This judicial district is the proper venue to hear this dispute because the Secretary and the PDBR, which are organized under the DoD, reside in Washington, D.C. and the acts or omissions giving rise to this lawsuit took place in the judicial district of the District of Columbia. 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

12.    Plaintiff Brett Herrington served in the United States Army as a Chemical Operations Specialist in the 3rd Battalion, 75th Ranger Regiment, from January 9, 2002 until April 22, 2005, when he separated from the Army with an honorable discharge due to the lower back injury he sustained while serving. SPC Herrington is a United States citizen and resides at 3232 FM 163 Road, Cleveland, Texas 77327.

13.     Defendant United States Department of Defense, headquartered at 1400 Defense Pentagon, Washington, D.C. 20301-1440, is a department of the Executive Branch of the United States Government. The Secretary is the head of the Department of the Army—which is a branch of the DoD. The PDBR is an organization within the Office of the Secretary of Defense, and DoD Instruction 6040.44 (July 2, 2015) governs the operation of the PDBR. The DoD is an agency of the United States under the APA (5 U.S.C. § 701(b)(1)), and falls within the scope of 28 U.S.C. § 1391.

## BACKGROUND

### I.    Military Discharge Procedures

14.     Chapter 61 of Title 10 of the United States Code establishes the process through which all military departments may discharge disabled servicemembers. It authorizes the discharge of military personnel who are found to be unfit for continued military service due to physical or mental health related disability. *See* 10 U.S.C. §§ 1201-1222.

15.     Fitness for duty is governed by regulations set forth by the various military departments. The Army, like other branches of the military, evaluates each servicemembers' medical conditions to determine whether they prevent the servicemembers' continued military service ("fitness") and, if so, to identify the medical conditions that individually, or in combination, render the servicemember unfit for continued service. *See* Army Reguls. 635-40 ¶ 5-4(g).

16.     There are two main steps to the Army's process for evaluating disability retirement. First, a Medical Evaluation Board ("MEB") reviews the servicemember's medical records and issues a report determining whether a servicemember has a disability and whether the disability warrants review by a Physical Evaluation Board ("PEB"). Second, the PEB reviews the MEB's report, along with any other relevant records, and determines whether the servicemember has a disability that renders them unfit for military service. *See* Army Reguls. 635-40 ¶¶ 4-1–5-27.

17.     If the PEB determines that the servicemember is unfit for military service, meaning that their disability is an "unfitting condition" that prevents them from reasonably performing their duties, then the PEB must apply the VA Schedule of Rating Disabilities ("VASRD") to the servicemember's conditions to determine at what percentage to rate each disability. *See* Army Reguls. 635-40 ¶ 4-22. Each unfitting condition is given its own rating, and the PEB assigns a combined rating based on the sum of those individual ratings. If a servicemember's combined disability rating is at least 30%, they are entitled to disability retirement and retirement benefits, including military health care for the servicemember and their family.[1] 10 U.S.C. § 1201(a)-(b). A disability retiree is entitled, among other things, to military health care (TRICARE) for the retiree, the retiree's spouse, and the retiree's minor children, as well as access to military bases and commissary privileges. Alternatively, if a servicemember's combined disability rating is less than 30%, they will be medically separated with a one-time lump-sum severance payment and without military heath care for the servicemember and their family. *Id*. § 1203(a)-(b); *see also id*. § 1212.

18.     A servicemember medically separated between September 11, 2001 and December 31, 2009 may appeal the PEB's decision to the PDBR. The PDBR was established to provide a forum in which servicemembers, like SPC Herrington, could have inaccurate and unjustifiably low disability ratings reviewed and corrected.

---

[1] Under 10 U.S.C. § 1201(b), disability retirement requires that (1) the disability "is of a permanent nature and stable," (2) the disability does not result from the servicemember's "intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence," and (3) the member has at least 20 years of service or is found to have at least a 30% disability rating under the VASRD. SPC Herrington's disabilities are permanent and, as reflected in his medical reports, the result of his service to his country. Further, SPC Herrington qualifies as an "eligible member" under 10 U.S.C. § 1201(c)(1) because he served as "[a] member of a regular component of the armed forces entitled to basic pay." Thus, the only criterion at issue for disability retirement and associated disability pay is whether SPC Herrington's disabilities rendered him at least 30% disabled under the VASRD.

19.     Congress passed the Dignified Treatment of Wounded Warriors Act in January 2008, which established the PDBR, in response to a report by a DoD independent review group that examined conditions at Walter Reed Army Medical Center and National Naval Medical Center. The report recommended, among other things, that "[t]he Under Secretary of Defense . . . conduct a quality assurance review [of] all . . . Disability Evaluation System decisions of 0, 10, or 20 percent disability . . . cases since 2001 to ensure consistency, fairness, and compliance with applicable regulations."[2] At a 2007 joint congressional hearing that led to the Wounded Warriors Act, General James Terry Scott stated that it is "apparent that DoD has strong incentive to assign ratings less than 30 percent so that only separation pay is required and continuing family health care is not provided."[3] The PDBR was thus created to establish "an independent board to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001." *See* 153 Cong. Rec. S9857, 9858 (July 25, 2007) (statement of Sen. Carl Levin).

20.     Under 10 U.S.C. § 1554a, the PDBR is tasked with reviewing the findings and decisions of the PEB and providing a recommendation to the Secretary as to whether to re-characterize or modify a servicemember's disability rating. The Secretary ultimately decides whether to accept or reject the recommendation from the Review Board. The Secretary, however, commonly adopts the Review Board's determinations on a *pro forma* basis.

---

[2] *See Rebuilding the Trust: Independent Review Group on Rehabilitative Care and Administrative Processes at Walter Reed Army Medical Center and National Naval Medical Center, Rebuilding the Trust* 32, INDEP. REV. GRP. ON REHAB. CARE & ADMIN. PROCESSES (2007), https://apps.dtic.mil/sti/pdfs/AD1034214.pdf.

[3] *Hearing to Receive Testimony on the Department of Defense and Veterans Affairs Disability Rating Systems and the Transition of Servicemembers from the Department of Defense to the Department of Veterans Affairs J. Hearing Before the S. Comm. on Armed Servs.& S. Comm. on Veterans' Affs.*, 100th Cong. 104 (2007) (statement of Lieutenant General James Terry Scott (Ret.), Chairman, Veterans' Disability Benefits Commission).

21.     As part of its review of the disability rating, the PDBR, like the PEB, must strictly follow the VASRD. 10 U.S.C. § 1216a; DoDI 6040.44 encl. 3, § 4. The PDBR is precluded from using any DoD directive that conflicts with the VASRD in making its decision. The PDBR has several obligations under the VASRD, including: (1) when there is a question as to which of two disability evaluations shall be applied, to apply the higher evaluation if the "disability picture more nearly approximates the criteria required for that rating";[4] (2) "to administer the law under a broad interpretation" and resolve any doubt regarding the degree of disability "in favor of the claimant";[5] and (3) with any form of joint pathology, to "recognize painful motion with joint or periarticular pathology as productive of disability."[6] As discussed below, the PDBR violated each of these requirements when it reviewed SPC Herrington's application. Moreover, in further violation of DoDI 6040.44, the PDBR refused to consider whether SPC Herrington's bilateral radiculopathy was an unfitting condition that warranted a higher disability rating. As a consequence, the PDBR denied SPC Herrington the disability retirement to which he is entitled due to the disabilities he sustained during his faithful and honorable service to his country.

## II.     SPC Herrington Suffered Serious Injuries Serving His Country.

22.     On November 21, 2001, in direct response to the September 11 attacks, Mr. Brett Herrington enlisted in the United States Army in order to fight for his country. At the time of his

---

[4] 38 C.F.R. § 4.7.

[5] *Id.* § 4.3.

[6] *Id.* § 4.59.

enlistment, Mr. Herrington was a healthy 19-year-old working in construction and farming as a heavy equipment operator.[7]

23.    SPC Herrington began active duty on January 9, 2002, and served honorably as a Chemical Operations Specialist (Military Occupational Specialty 74D) in the 75th Ranger Regiment of the Army, for which he operated and maintained nuclear, biological, and chemical ("NBC") detection and decontamination equipment and applied NBC defense measures. The 75th Ranger Regiment is the Army's premier large-scale Special Operations Force. It is "comprised of the specially selected and well-trained Soldiers constantly tested for the privilege of serving in the Regiment."[8]

24.    The 75th Ranger Regiment "was one of the first units alerted to respond to the [September 11] attacks,"[9] and SPC Herrington applied to join the highly-selective 75th Ranger Regiment knowing his acceptance would place him on the frontlines of the Global War on Terrorism. As a Soldier in the Ranger Regiment, also known as an Army Airborne Ranger, SPC Herrington performed airborne operations as well as light infantry and direct-action operations. Along with offering support to the Army as a whole, SPC Herrington was deployed throughout

---

[7] In fact, SPC Herrington's medical examination for enlistment was completely normal, without a single noted physical injury or ailment. As SPC Herrington was found to be in good health, he also qualified for airborne duty. "Airborne Soldiers have a long and distinguished tradition of being an elite body of fighting men and women–people who have always set the example for determination and courage." *Airborne School: Earn Your Wing-Become Part of an Elite Family*, U.S. ARMY, https://www.goarmy.com/soldier-life/being-a-soldier/ongoing-training/specialized-schools/airborne-school.html (last visited Nov. 22, 2021).

[8] 2017 Fact Book at 20, U.S. SPECIAL OPERATIONS COMMAND (2017), https://www.socom.mil/FactBook/2017%20Fact%20Book.pdf.

[9] 75th Ranger Regiment Public Affairs, *Ten Things You Didn't Know About the 75th Ranger Regiment (Part 1)*, U.S. ARMY (Feb. 18, 2020), https://www.army.mil/article/232124/ten_things_you_didnt_know_about_the_75th_ranger_regiment_part_1.

his career in support of specialty operations, such as recovering personnel and target takeovers. As a result of his honorable military service, SPC Herrington received several medals and citations including the Army Commendation Medal with "V" Device, which is awarded for acts of valor, the Global War on Terrorism Service Medal, and the Global War on Terrorism Expeditionary Medal.

25.     Just over a year after enlisting, and after completing Ranger training, SPC Herrington deployed to Iraq in support of the first phase of Operation Iraqi Freedom. From March 18, 2003 to May 2, 2003, SPC Herrington served in Iraq for what would be the entirety of the 2003 Invasion of Iraq, which initiated the Iraq War.

26.     On August 3, 2003, after his return from deployment, SPC Herrington participated in a parachute training exercise at Fort Benning, Georgia, in preparation for an upcoming deployment to Afghanistan. The training required SPC Herrington and members of the Ranger Regiment to jump out of a plane in two second increments. SPC Herrington landed directly on his lower back on a hard bluff – a small cliff – and immediately lost feeling in the lower half of his body. SPC Herrington was unable to move for fifteen minutes. Out of fear of potential repercussions and given the nature of the training exercise, SPC Herrington did not call out for help but waited until he was able to move, and thereafter proceeded to complete the training exercise.

27.     The day after sustaining his back injury, SPC Herrington tried to see a surgeon, Dr. Robert Wenzel, with whom he was familiar at Fort Benning. At that time, however, Dr. Wenzel had already deployed to Afghanistan. Uncertain of whom else to turn to for help and nervous that his injury would force him to miss his upcoming deployment, SPC Herrington suffered in silence.

Prior to his fall, SPC Herrington had never had back or leg pain. SPC Herrington was 20 years old at the time of the accident.

28.     Despite the pain resulting from this training injury, SPC Herrington nevertheless deployed to Afghanistan in support of Operation Winter Strike from September 19, 2003 to December 12, 2003, during which time SPC Herrington experienced continuous and severe back and leg pain. An X-ray done during his deployment showed that SPC Herrington had fractured several vertebrae as a result of the parachute landing, for which he was prescribed strong pain killers and muscle relaxants so that he could continue his mission.

29.     Once SPC Herrington returned from Afghanistan, his pain had progressed so severely that he was forced to seek comprehensive medical attention for his injuries. On February 19, 2004, an orthopedic specialist documented that SPC Herrington suffered from "low back pain and right L2, 3, or 4 radiculopathy."[10] The physician noted that SPC Herrington also experienced limited range of motion and forward flexion of his spine and "transient loss of feeling/movement in legs . . . [with] persistent [low back pain] and episodic leg numbness."[11] On February 24, 2004, a follow-up Magnetic Resonance Imaging ("MRI") Study of SPC Herrington's lumbar spine revealed "[m]ultilevel mild degenerative changes most significant at L4-5 where there is focal protrusion or extrusion of disc material centrally that causes stenosis and compromises the thecal sac."[12] Further, the imaging revealed that the "protrusion/extrusion of disc material . . . is in contact with both L5 nerve roots."[13]

---

[10] Application for Review by the Physical Disability Board of Review at 47 (Sept. 25, 2017) (hereinafter "PDBR Application").

[11] *Id*.

[12] *Id*. at 27.

[13] *Id.*

30.     On March 4, 2004, SPC Herrington underwent a further orthopedic evaluation for his injuries. Most notably, the evaluation found that SPC Herrington's forward flexion range of motion was limited to 30 degrees "due to pain."[14] A "straight leg test" was also conducted to determine whether SPC Herrington was experiencing radiculopathy.[15] SPC Herrington's straight leg test was positive for his left leg, confirming the type of nerve sensitivity that is commonly seen in radiculopathy.[16]

31.     Despite his diagnosis, SPC Herrington was unable to begin treatment for his low back pain as, on March 5, 2004, less than two weeks after the February 2004 diagnosis and only one day after his orthopedic evaluation, SPC Herrington again deployed to Afghanistan in support of Operation Enduring Freedom.

32.     Upon his return from his second deployment to Afghanistan in late May 2004, SPC Herrington was assigned to several activity-limiting positions due to his worsening back and nerve pain. In early June 2004, SPC Herrington underwent further evaluation for his back pain. His provider noted that SPC Herrington's pain was "worse with prolonged sitting or standing" and "pain did go into left [lower extremity.]"[17] At that time, the provider noted that he expected SPC Herrington would likely need to go through the disability evaluation and separation process.[18]

---

[14] *Id*. at 37.

[15] *See, e.g.*, David J. Magee, *Lumber Spine*, in ORTHOPEDIC PHYSICAL ASSESSMENT, 515, 558–64 (5th ed. 2007) (explaining that the straight leg test is an important physical sign of disc herniation which can cause radiculopathy). Radiculopathy is a condition caused by a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness in the lower extremities.

[16] PDBR Application at 37.

[17] *Id.* at 49.

[18] *Id*.

33.     On July 28, 2004, SPC Herrington underwent a medical exam at Dwight D. Eisenhower Army Medical Center where his back and leg injuries were diagnosed as "[Herniated Nucleus Pulposus] L 4/5 with radiculopathy."[19] SPC Herrington was prescribed physical therapy and facet injections.[20] Neither of those treatments provided effective relief to SPC Herrington, who continued to have severe, constant back and leg pain and reduced range of motion in his lower back.

## III.   The Army's Medical Discharge Process Erred in Failing to Discharge SPC Herrington with Disability Retirement.

34.     SPC Herrington wholeheartedly wanted to continue serving in the Army, but by September 2004, the Army recognized his physical limitations were too severe and began the process of medically separating SPC Herrington. On September 24, 2004, for his disability evaluation, a medical examiner examined SPC Herrington and documented that his range of motion for forward flexion of the thoracolumbar spine was 45 degrees.[21] SPC Herrington's movement was accompanied by complaints of moderate back pain, and the medical examiner noted that SPC Herrington had constant pain with physical activity. The examiner noted that SPC Herrington's pain was a "6-7" out of 10 with forward flexion.[22] The September 27, 2004 report of SPC Herrington's physical examination also identified radiculopathy based on a positive straight leg test at 30 degrees.[23] The examiner documented the two injuries in his clinical evaluation report,

---

[19] *Id*. at 31.

[20] *Id*.

[21] Physical Therapy Evaluation (Sept. 24, 2004). Although this record was not included in SPC Herrington's PDBR application, the PDBR quoted and cited the September 24, 2004 evaluation in its findings.

[22] *Id*.

[23] PDBR Application at 39.

noting (1) musculoskeletal spine injury with moderate decreased range of motion and (2) neurologic injury due to positive straight leg test at 30 degrees.[24]

35.     As part of SPC Herrington's September 2004 disability evaluation, his Commander attested that SPC Herrington's back injury

> prevents him from bending and lifting even very light weight. Simply moving his personal equipment causes him intense pain . . . . [t]he most basic physical training events, push-ups, sit-ups and running all cause him sufficient pain to preclude them from his everyday activities. Progressively worsening throughout the duty day he is not able to stand up straight or hold his head up level because of the pain involved.[25]

SPC Herrington's Commander also noted that "SPC Herrington is a soldier that I would want with me anywhere in the world under any circumstances, but his physical condition precludes him from deploying."[26]

A.     **The Medical Evaluation Board Found SPC Herrington Failed Retention Standards Due to His Injuries.**

36.     The MEB issued its report on SPC Herrington on February 2, 2005, finding that SPC Herrington suffered from "[c]hronic uncomplicated non radicular low back pain" that it characterized as "slight/intermittent."[27]

37.     The MEB explicitly found that SPC Herrington's low back pain did not exist before entering the Army and concluded that SPC Herrington's lower back injury was medically unacceptable under Army Regulation 40-501 ¶ 3-41(e). At the time of the MEB's review, Army Regulation 40-501 ¶ 3-41(e), was a miscellaneous provision that provided for "[c]onditions and defects not mentioned elsewhere in this chapter." The MEB did not explain how it determined that

---

[24] *Id.*

[25] *Id.* at 29.

[26] *Id.*

[27] *Id.* at 19.

SPC Herrington's low back pain was "non radicular," but did recommend that SPC Herrington be referred to a PEB for his lower back pain.

**B.     The Physical Evaluation Board Improperly Rated SPC Herrington at 10%.**

38.     Upon review from the MEB, an Informal PEB convened and issued a one-page report with its main conclusion that SPC Herrington was entitled to a 10% disability rating under 38 C.F.R. § 4.71a (DC 5299-5242) for his unfitting chronic subjective low back pain. The PEB determined that SPC Herrington had "chronic subjective low back pain, without neurologic abnormality, without tenderness or spasm."[28] By labeling SPC Herrington's injury as "without neurologic abnormality," the PEB conveyed that it did not believe SPC Herrington suffered from radiculopathy and, as such, radiculopathy was not an additional unfitting condition that rendered SPC Herrington unfit for further service. The PEB did note that SPC Herrington's range of motion was limited by pain, but did not state to what degree SPC Herrington's range of motion was reduced by pain.

39.     In April 2005, as a result of the PEB's findings, SPC Herrington was medically separated from the Army with an honorable discharge but *without* disability retirement. Because SPC Herrington received a disability rating of 10%, he was entitled to a lump-sum severance package, with *no other benefits* to him or his dependents.

**IV.   The Review Board Revised the PEB's 10% Rating to Only a 20% Rating, in Violation of Controlling Regulations and the Clear Evidence in SPC Herrington's Medical Record.**

40.     In September 2017, SPC Herrington used the Wounded Warriors Act for its intended purpose when he appealed his PEB rating to the PDBR. SPC Herrington satisfied all of the eligibility criteria for review by the PDBR as required by 10 U.S.C. § 1554a because SPC

---

[28] PDBR Application at 22.

Herrington was separated between September 11, 2001, and December 31, 2009, for unfitness for duty due to a medical condition with a disability rating less than 20% (in this case, 10% for chronic subjective low back pain) and was not found eligible for permanent military retirement.

41.     In his application, SPC Herrington asked the Review Board to reconsider his 10% rating given the abundant evidence that the PEB should have found that his disabilities constituted at least a 40% rating. SPC Herrington argued that his low back pain warranted a 40% rating because the evidence showed that when limitation of motion due to pain was considered, as is required by the VASRD, SPC Herrington's forward flexion of the thoracolumbar spine was limited to 30 degrees. 38 C.F.R. § 4.71a, (DC 5235-5243). In addition, SPC Herrington asked that the PDBR find that his bilateral radiculopathy was an unfitting condition that warranted a disability rating of 10% for each of his legs. 38 C.F.R. § 4.124a (DC 8520; mild paralysis of the sciatic nerve).

42.     SPC Herrington provided the PDBR with much the same information detailed in Paragraphs 22-35. In short, SPC Herrington showed clear evidence of both (1) low back pain resulting in limited mobility and functional loss due to pain that supported a disability rating of 40% and (2) radiculopathy affecting both legs that should have been classified as an unfitting condition warranting an additional 20% (10% for each leg) in his combined disability rating.

43.     On May 15, 2019, the Review Board "recommend[ed] a disability rating of 20%, coded 5299-5242 IAW VASRD § 4.71a" for SPC Herrington's low back pain.[29] The Review Board made its determination based on the following facts:

> An MRI showed multilevel degenerative disc disease, most significant at L4-5 where there was extrusion of disc material centrally that caused stenosis and compromised the thecal sac. The March 2004 orthopedic examination showed decreased flexion to 30 degrees (normal 90) due to pain and tenderness of the

---

[29] PDBR Findings, Case: PD-2017-05962 at 3 (hereinafter "PDBR Findings").

spinous processes. A spine surgery clinic visit in June 2004 showed tenderness of the left paraspinal muscles at L4. A fusion was not recommended due to [SPC Herrington's] age. At a spine clinic visit in September 2004 the examiner indicated there were no surgical options. The 24 September 2004 physical therapy (PT) range of motion (ROM) examination, 7 months prior to separation, showed flexion of 45 degrees and combined ROM of 175 degrees (normal 240). Painful motion was present. The examiner noted [SPC Herrington] had good strength. During the 27 September MEB examination . . . 7 months prior to separation, the CI reported his "legs go numb and tingle." Physical examination showed moderate decreased ROM.[30]

44.    The only explanation as to how the Review Board assessed SPC Herrington's low back pain, radiculopathy, and March 2004 and September 2004 range of motion evaluations was a single line stating, "[t]he [Review Board] considered the somewhat disparate [range of motion] evaluations and assigned higher probative rating value to the [September range of motion] study because it was more complete and closer to separation."[31]

45.    The Review Board concluded that:

[A] 20% rating, but no higher, was justified for limitation of flexion (greater than 30 degrees but not greater than 60 degrees), as reported on the PT examination proximate to separation. There was no documentation of intervertebral disc syndrome with incapacitating episodes which would provide for a higher rating under that formula. After due deliberation, considering all the evidence and mindful of VASRD § 4.3 (reasonable doubt), the panel recommends a disability rating of 20% for the back condition, coded 5299-5242.[32]

46.    The Review Board further stated that, SPC Herrington's "radiculopathy, despite being contended, was not in the scope of review IAW DoDI 6040.44."[33]

_____

[30] *Id.* at 2–3.

[31] *Id.* at 3.

[32] *Id.*

[33] *Id.*

47.     On July 15, 2020, the Deputy Assistant Secretary of the Army accepted the PDBR's recommendation to rate SPC Herrington's disability at a 20% rating.[34] Although the Deputy Assistant Secretary increased SPC Herrington's disability percentage, because severance pay is not calculated on percentage of disability, SPC Herrington received no additional compensation for his injuries. Further, by assigning SPC Herrington a disability rating of less than 30%, the Secretary denied SPC Herrington significant benefits to which he is entitled, including, TRICARE medical coverage, Post Exchange and Commissary privileges, and access to Morale, Welfare and Recreation programs.

## SUBSTANTIVE ALLEGATIONS

## V.    The Review Board Erred In Its Assessment of SPC Herrington's Injuries.

48.     Federal law requires the Secretary of the Army and the Review Board to strictly follow the VASRD. *See* 10 U.S.C. § 1216a(a) (the Review Board must "utilize" and "not deviate" from the VASRD); DoDI 6040.44 encl. 3, § 4(f) (the Review Board must "conduct reviews of the disability rating(s)" "in accordance with" the VASRD). However, the Review Board failed to strictly and properly apply the VASRD when assessing SPC Herrington's low back pain and thus rendered a decision that is arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

49.     Moreover, in accordance with 10 U.S.C. § 1554a, the Review Board is required to review "conditions identified but not determined to be unfitting by the physical evaluation board . . . when contended by the applicant." DoDI 6040.44 § 3(c); *id.* encl. 3, § 1(b). The Review Board was thus instructed to review the evidence of SPC Herrington's bilateral radiculopathy after SPC

---

[34] The Deputy Assistant Secretary of the Army signed the letter accepting the PDBR's recommendation. The Deputy Assistant Secretary acts on behalf of the Secretary.

Herrington raised it in his application to the PDBR. Yet, with hardly an explanation, the Review Board erred further by refusing to consider whether SPC Herrington's bilateral radiculopathy was an unfitting condition.

50.     If the PDBR had properly applied the VASRD and followed DoDI 6040.44, SPC Herrington would have received a disability rating of at least 40% for his low back injury in combination with his bilateral radiculopathy, thus entitling SPC Herrington to receive permanent military disability retirement.

### A. The Review Board Failed to Follow the VASRD When Assessing SPC Herrington's Low Back Pain.

51.     Pursuant to the VASRD, "forward flexion of the thoracolumbar spine 30 degrees or less" is entitled to a 40% rating. 38 C.F.R. § 4.71a (DC 5235-5243). SPC Herrington's March 4, 2004 orthopedic evaluation found that SPC Herrington's forward flexion was limited to 30 degrees due to pain. Accordingly, SPC Herrington's low back pain is entitled to a 40% disability rating.

52.     In clear violation of the VASRD, the Review Board chose to effectively disregard the March 2004 evaluation. Instead, it "assigned higher probative rating value to the [September 2004] study because it was more complete and closer to separation."[35]

53.     By discounting the March 2004 evaluation, the PDBR flouted federal regulations and failed (1) to apply the evaluation that more nearly approximated SPC Herrington's disability in accordance with 38 C.F.R. § 4.7, as the March 2004 examination alone accounted for SPC Herrington's additional functional loss due to pain in accordance with 38 C.F.R. §§ 4.40, 4.45,

---

[35] PDBR Findings at 3.

4.59; and (2) to resolve any doubt regarding SPC Herrington's injuries in favor of SPC Herrington

in accordance with 38 C.F.R. § 4.3.

> ### i. The Review Board Inappropriately Assigned Controlling Weight to the September 2004 Range of Motion Evaluation and Ignored SPC Herrington's Functional Loss Due to Pain.

54.     The PDBR's decision to give controlling weight to SPC Herrington's September

2004 exam was *contrary to law*. When there is a question as to which of two evaluations to apply,

the PDBR is required to apply the higher evaluation if it more nearly approximates the claimant's

disability picture. *See* 38 C.F.R. § 4.7.

55.     Contrary to the Review Board's conclusory statement, the evidence in the record

makes clear that the March 2004 examination, *not* the September 2004 evaluation, was more

complete and more accurately captured the extent of SPC Herrington's disability. Specifically, the

March 2004 evaluation was more complete because it included clear documentation that SPC

Herrington's range of motion was reduced due to pain.

56.     Painful motion and weakness *must* be considered in evaluating a claimant's

disability because a body part, which becomes painful on use, must be regarded as seriously

disabled. 38 C.F.R. §§ 4.40 ("Disability of the musculoskeletal system is primarily the inability . .

. to perform the normal working movements of the body with normal excursion, strength, speed,

coordination and endurance. It is essential that the examination on which ratings are based

adequately portray the anatomical damage, and the functional loss . . . . due to pain[.]"), 4.59

("painful motion is an important factor of disability, the facial expression, wincing, etc., on

pressure or manipulation, should be carefully noted and definitely related to affected joints"); *see

also DeLuca v. Brown*, 8 Vet. App. 202 (1995) (disability ratings should reflect the veteran's

functional loss due to fatigability, incoordination, endurance, weakness, and pain). The rating must

also reflect the condition of the veteran during flare-ups. *See DeLuca,* 8 Vet. App. at 206.

57.     Not only does the VASRD require that painful motion be considered in evaluating a claimant's disability, but the VASRD requires examiners to express the degree of additional range of motion loss due to pain on use or during flare ups. *Mitchell v. Shinseki*, 25 Vet. App. 32, 44 (2011) (citing *DeLuca*, 8 Vet. App. at 206).

58.     Although the September 2004 evaluation mentions functional loss due to pain and pain during flare ups, the September 2004 evaluation *does not specify the degree* to which SPC Herrington's range of motion is reduced by pain. The PDBR briefly noted in its summary that the September 2004 evaluation stated that "[p]ainful motion was present[,]"[36] but the PDBR *failed to account* for painful motion in its determination of the appropriate disability rating and failed to even mention the degree of painful motion that is documented in SPC Herrington's records. In fact, the PDBR *made no mention* as to SPC Herrington's painful motion or functional loss due to pain in its conclusion.

59.     Under the VASRD, the PDBR was *required* to consider *how* painful motion and functional loss due to pain affected SPC Herrington's disability rating and yet the PDBR entirely, and improperly, overlooked the documentation of SPC Herrington's painful motion. *See Voyles v. Brown*, 5 Vet. App. 451, 453 (1993) (vacating and remanding decision by Board of Veterans' Appeals that "failed to make any findings as to the extent of appellant's pain on motion. Thus, not only did the Board fail to analyze the effect of his pain on his disability, it also relied on a VA medical examination that *failed to adhere* to the mandate of 38 C.F.R. § 4.40 that examinations upon which ratings are based adequately portray functional loss due to pain, and determine whether pain 'was evidenced by the visible behavior of the claimant'" (emphasis added) (citation omitted)).

---

[36] PDBR Findings at 3.

60.     "It is [] essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history." 38 C.F.R. § 4.1. By completely overlooking the range of motion measurements from March 2004 and SPC Herrington's functional loss due to pain, the PDBR failed to consider SPC Herrington's disability in relation to its history. Under the VASRD, because the March 2004 evaluation properly accounts for the degree to which SPC Herrington's range of motion was limited due to pain, the March 2004 evaluation more nearly approximates SPC Herrington's injury, accounts for SPC Herrington's functional loss due to pain, and *must* control. *See* 38 C.F.R. § 4.7.

### ii.   The Review Board Did Not Resolve Doubt in Favor of SPC Herrington as Required by 38 C.F.R. § 4.3.

61.     Although it is clear that the March 2004 examination was more complete and more accurately approximated SPC Herrington's low back injury, the VASRD also requires that when reasonable doubt arises regarding the degree of disability, such as the range of motion discrepancy between the March 2004 and the September 2004 exams, such doubt will be resolved in favor of the veteran. 38 C.F.R. § 4.3 ("When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant."); *see also* 38 C.F.R. § 3.102 ("The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships."); 38 U.S.C. § 5107(b) ("The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary *shall* give the benefit of the doubt to the claimant" (emphasis added)); *see also King v. St. Vincent's Hosp.*, 502

U.S. 215, 220 n.9 (1991) (noting the "canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor" (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946))).

62.     Although required to do so, the PDBR failed to resolve any doubt in favor of SPC Herrington as to which of the two evaluations should control. *Brown v. Gardner*, 513 U.S. 115, 117–18 (1994) (noting "rule that interpretive doubt is to be resolved in the veteran's favor"). The PDBR thus acted contrary to law when it arbitrarily, and without adequate explanation, determined the September 2004 evaluation would alone dictate the outcome of SPC Herrington's request for relief. *See Gilbert v. Derwinski*, 1 Vet. App. 49, 54 (1990) ("[W]hen a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that veteran prevails. This unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services.").

### B. The Review Board Failed to Review SPC Herrington's Medical Records for Radiculopathy, in Violation of DoD Instruction 6040.44.

63.     Under 10 U.S.C. § 1554a, the Review Board is tasked with reviewing the "findings and decisions" of the PEB. Upon request, the PDBR can review conditions "identified but not determined to be unfitting" by a servicemember's prior PEB. *See* DoDI 6040.44 encl. 3, § 1(b). For every case referred to the PDBR, it must "review the complete case record that served as the basis for the final Military Department PEB rating determination and, to the extent feasible, collect all the information necessary for competent review and recommendation." *Id*. § 4(d). The PDBR failed to review SPC Herrington's medical records in order to correct the MEB's and the PEB's erroneous determination that SPC Herrington's low back pain was non-radicular.

64.     Despite the extensive medical documentation noting radiculopathy, discussed *supra*, the MEB made no mention of radiculopathy in its recommendation to the PEB. This runs

afoul of the MEB's duty under DoDI 1332.38 to document "full clinical information of all medical conditions the Service member has." DoD Instruction 1332.38 encl. 3 ¶ P1.2.3. The PEB similarly erred when it neglected to consider radiculopathy, despite its being listed in SPC Herrington's examinations. Finally, the PDBR acted erroneously and in violation of DoDI 6040.44, when it found that "radiculopathy, despite being contended, was not in the scope of review."[37] The PDBR's misplaced assertion that SPC Herrington's contended bilateral radiculopathy was outside the scope of the PDBR's review runs afoul of 10 U.S.C. § 1554a and DoDI 6040.44. Had the PDBR properly evaluated the evidence before it, the preponderance of the evidence would have shown SPC Herrington's bilateral radiculopathy both independently, and certainly in combination with his back, was an unfitting condition under Army Regulation 635-40, chapter 5, paragraph 4(g).

65.     Although there is no diagnostic code for bilateral radiculopathy, 38 C.F.R. § 4.20 provides what should happen when a servicemember's injury does not neatly fit an existing diagnostic code: The injury should be categorized under an analogous diagnostic code. 38 C.F.R. § 4.124a (DC 8520), the diagnostic code for paralysis of the sciatic nerve, is analogous to bilateral radiculopathy because the anatomical area of the neurologic deficit produced by radiculopathy more nearly approximates the level of disability produced by sciatica when considering functional impairment, anatomical location, and symptomatology. Under § 4.124a, DC 8520, mild, incomplete paralysis, where the nerve is not completely paralyzed and there is tingling and mild pain in the leg, warrants a 10% rating. This accurately categorizes SPC Herrington's bilateral lower extremity radiculopathy. As a result, each of SPC Herrington's legs should have a disability rating of 10%. Thus, in combination with his low back injury, if the PDBR had properly applied the

---

[37] PDBR Findings at 3.

VASRD, SPC Herrington would have received a disability rating greater than 30% and would be entitled to permanent disability medical retirement.

## COUNT I

### Violation of the APA

66.    SPC Herrington incorporates the allegations set forth in Paragraphs 1-65 above.

67.    The Secretary's decision to adopt the Review Board's recommendation not to change SPC Herrington's disability rating to at least 40% is subject to judicial review as a final "agency action" under the APA. 5 U.S.C. §§ 551(13), 701, 704; *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) ("[I]t has become well established that judicial review of decisions of military correction boards is conducted under the APA.").

68.    SPC Herrington's appeal to the Review Board was the final administrative option available to him for review of his combined disability rating. He has no further administrative remedies for challenging his erroneous combined disability rating. He has made every attempt to resolve this conflict with the DoD, and has exhausted all possible administrative remedies.

69.    Under the APA, this Court must set aside a final agency action that is arbitrary, capricious, unsupported by substantial evidence, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The Secretary's decision to confirm a 20% rating for SPC Herrington's disability violated this provision of the APA because the Secretary incorrectly denied SPC Herrington the disability retirement to which he is entitled under 10 U.S.C. § 1201(a).

70.    Specifically, the Review Board violated the mandate to follow the VASRD, ignored DoDI 6040.44, relied on facts directly contradicted by the record, mischaracterized evidence in the record, entirely failed to assess SPC Herrington's bilateral radiculopathy, cherry-picked portions of the record unfavorable to SPC Herrington, and ignored those portions of the record favorable to him. Had the Review Board properly applied the VASRD and *its own regulations*,

SPC Herrington would have received a combined rating of 30% or greater, and would have been entitled to permanent disability medical retirement. Such a retirement status would have entitled SPC Herrington to benefits such as TRICARE medical coverage, Post Exchange and Commissary privileges, and access to Morale, Welfare and Recreation programs.

### PRAYER FOR RELIEF

SPC Herrington asks the Court to make the following findings:

1.      Find that the Secretary's July 15, 2020 decision, and the Review Board's May 15, 2019 decision, were arbitrary and capricious, unsupported by substantial evidence, contrary to law, and set aside that decision under 5 U.S.C. § 706(2)(A).

2.      Order the Secretary to correct SPC Herrington's military records to reflect that both SPC Herrington's lower back condition and bilateral radiculopathy are unfitting conditions warranting a disability rating.

3.      Order the Secretary to correct SPC Herrington's military records to reflect the correct combined disability.

4.      Order any other relief the Court deems just.


Dated: December 2, 2021                          Respectfully submitted,

                                                 /s/ *Adam L. Perlman*
                                                 Adam L. Perlman (DC Bar No. 459368)
                                                 LATHAM & WATKINS

                                                 555 Eleventh Street, N.W., Suite 1000
                                                 Washington, D.C.  20004
                                                 Telephone: (202) 637-2200
                                                 Facsimile: (202) 637-2201
                                                 adam.perlman@lw.com

Marc Zubick (*pro hac vice forthcoming*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
marc.zubick@lw.com

Peter Prial (*pro hac vice forthcoming*)
Avery Borreliz (*pro hac vice forthcoming*)
200 Clarendon Street, Floor 27
Boston, MA  02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
peter.prial@lw.com
avery.borreliz@lw.com

NATIONAL VETERANS LEGAL SERVICES
PROGRAM
Esther Leibfarth (DC Bar No. 10164515)
David Sonenshine (DC Bar No. 496138)
1600 K Street, NW, Suite 500
Washington, DC  20006
Telephone: (202) 621-5677
Facsimile: (202) 328-0063
esther@nvlsp.org
david@nvlsp.org